## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**DANIEL CONCEPCION,** *et al.*,
    Plaintiffs,

    v.

**OFFICE OF THE COMMISSIONER OF BASEBALL,** *et al.,*
    Defendants.

Civil No. 22-1017 (MAJ/BJM)

## REPORT AND RECOMMENDATION

Plaintiffs Daniel Concepcion ("Concepcion"); Aldemar Burgos ("Burgos"); and Sidney Duprey-Conde ("Duprey-Conde") (collectively "the Players") brought a purported class action lawsuit against the Office of the Commissioner of Baseball ("the Commissioner's Office"); Major League Baseball's ("MLB's") current commissioner, Robert D. Manfred, Jr. ("Commissioner Manfred"); MLB's former commissioner, Allan Huber "Bud" Selig ("Former-Commissioner Selig"); and all thirty MLB teams ("the Teams") (collectively "Defendants"). Docket No. ("Dkt.") 35.

The Players allege MLB and the Teams are a cartel that colluded to depress their wages during their time as minor league baseball players. *Id.* ¶¶ 1–2. This, they contend, violated the Sherman Antitrust Act, the Fair Labor Standards Act ("FLSA"), and Puerto Rico wage and hour laws. *Id.*¶¶ 151–242. This court has federal question jurisdiction. Defendants moved to dismiss on both procedural and substantive grounds, Dkt. 51, and the Players responded. Dkt. 55. The Players then moved to supplement their response and file a memorandum in support. Dkts. 56, 57. Defendants replied to the Players' response, Dkt. 58, and responded to their supplemental motion. Dkt. 61. They then filed a notice of supplemental authority. Dkt. 66. These motions were referred to me for a report and recommendation. Dkt. 80.

For the foregoing reasons, Defendants' motion to dismiss should be **GRANTED.**

## BACKGROUND

The following facts are drawn from the amended complaint, Dkt. 35. Where there are legitimate conflicts apparent in the record regarding factual assertions, I have noted these conflicts. Plaintiffs have frequently mixed legal assertions with factual assertions in their filings; I have considered the intermingled factual assertions where possible, but I have excised conclusory legal assertions from this section. *See, e.g.*, *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (when considering a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Concepcion, Burgos, and Duprey-Conde played minor league baseball in the Kansas City Royals, San Diego Padres, and San Francisco Giants organizations respectively. Dkt. 35 at 12–14. Concepcion played from 2010 to 2016, Burgos played from 2015 to 2019, and Duprey-Conde played from 2016 to 2018. *Id.* Under his contract, Concepcion worked and played baseball in Idaho, North Carolina, and Kentucky. *Id.* at 11-12. Burgos played "rookie" and "A ball" for the Padres organization between 2015 and 2019. *Id.* at 12. Defendants assert this means his teams were in Arizona, California, Washington State, and Indiana, Dkt. 51 at 2, and the Players do not offer contrary information. Duprey-Conde played in the Giants organization from 2016 to 2018. Dkt. 35 at 13. The Players were drafted in Puerto Rico, received and signed their contracts in Puerto Rico, were paid in Puerto Rico, and performed training and conditioning in the Commonwealth. *Id.* at 12–15.

MLB is an unincorporated association comprised of the thirty teams and has "unified operation and common control over the [Teams]." *Id.* ¶ 31. However, each of the Teams is an MLB Franchise and the Teams are "separately owned and operated." *Id.* ¶¶ 42–72, 143. Former-Commissioner Selig served as the Commissioner of Baseball from 1998 to August 2014 when

Commissioner Manfred succeeded him. *Id.* ¶¶ 33–34. The Commissioner oversees all labor matters and acts as the owners' chief agent in forming minor league labor practices. *Id.* ¶ 37.

To play minor league baseball, players from Puerto Rico must participate in MLB's draft. *Id.* ¶ 109. Once selected by a team, players may not bargain with any other team. *Id.* ¶ 110. Here, the Players were paid less than $15,000 per year during each year they played. *Id.* Though they worked an average of 60 hours per week, they received no overtime pay and the Teams did not keep records of their hours worked. *Id.* at 12–15. And though the Players were required to participate in MLB's Spring Training, they were not compensated for this time. *Id.* ¶ 28. The Players believe these low salaries are imposed uniformly across the minor leagues. *Id.* ¶ 25. The MLB rules, adopted and renewed annually, do not permit the Players to negotiate a higher salary. *Id.* ¶ 26.

Per the MLB rules, all teams use the same uniform player contract when signing minor league players. *Id.* ¶ 15. Players must sign this contract to play in the minor leagues. *Id.* ¶ 16. All contracts must be filed with the Commissioner for approval. *Id.* Each contract contains a reserve clause allowing a player's team to retain the contractual rights to that player and restrict their ability to negotiate with other teams. *Id.* ¶ 4. Pursuant to the reserve clause, a player's uniform contract can be renewed by whichever team he plays for at season's end. *Id.* ¶¶ 4, 79. It can be renewed up to six times before a player becomes a free agent. *Id.*

## APPLICABLE LEGAL STANDARDS

Defendants move to dismiss the Players' claims under Federal Rules of Civil Procedure Rules 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6).

Under Rule 12(b)(1), which governs motions to dismiss for lack of subject-matter jurisdiction, the "party invoking the jurisdiction of a federal court carries the burden of proving its

existence." *P.R. Tel. Co. v. Telecomm's Reg. Bd. of P.R.*, 189 F.3d 1, 7 (1st Cir. 1999). When deciding whether subject-matter jurisdiction exists, the court follows two general rubrics: (1) when a defendant challenges the legal sufficiency of the facts alleged, the court credits plaintiffs' factual allegations and draws reasonable inferences in his or her favor; and (2) when the defendant challenges the truth of facts alleged by the plaintiff and offers contrary evidence, the court weighs the evidence. *Valentín v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001). "While the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion." *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002).

On a Fed. R. Civ. P. Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving the court's jurisdiction over the defendant. *See Negrón-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 23 (1st Cir. 2007). The plaintiff must make a prima facie showing by proffering "evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 51 (1st Cir. 2002). The defendant may put forward undisputed facts to rebut the plaintiff's prima facie showing, but any factual disputes are construed in the plaintiff's favor when deciding the jurisdictional question. *Id.* The court, however, does not "credit conclusory allegations or draw farfetched inferences." *Ticketmaster-New York v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994).

Rule 12(b)(5) provides that a defendant may move to dismiss for insufficient service of process. Fed. R. Civ. P. 12(b)(5). A motion under Rule 12(b)(5) is an appropriate mechanism to seek dismissal when a plaintiff fails to comply with Rule 4's procedures for service of process, including a plaintiff's failure to serve process within the 90-day time limit set forth in Fed. R. Civ. P. 4(m). *Mann v. American Airlines*, 324 F.3d 1088 (9th Cir. 2003); *Fernández-Salicrup v.*

*Figueroa-Sancha*, 2011 WL 13135962, at *1 (D.P.R. May 2, 2011). "A motion under Fed. R. Civ. P. 12(b)(5) . . . differ[s] from other motions permitted by Rule 12(b) in that [it] provide[s] the district court a course of action other than simply dismissing the case . . . . In other words, the court may convert the motion to dismiss under Fed. R. Civ. P. 12(b)(5) into a motion to quash service of process without dismissing the action." *Rivera Otero v. Amgen Mfg. Ltd.*, 317 F.R.D. 326, 328 (D.P.R. 2016) (citations omitted). "A motion to dismiss under Rule 12(b)(5) will only be granted if the defect is prejudicial to the defendant." *Fernández-Salicrup*, 2011 WL 13135962, at *1 (citations omitted). The burden of proof to establish proper service of process rests with the plaintiff. *Saez Rivera v. Nissan Mfg. Co.*, 788 F.2d 819, 821 (1st Cir. 1986); *Diaz-Rivera v. Supermercados Econo Inc.*, 18 F. Supp. 3d 130, 133 (D.P.R. 2014).

When faced with a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court "accept[s] as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences therefrom in the pleader's favor" to determine if the complaint states a claim for which relief can be granted. *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011). The court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the countercomplaint, matters of public record, and facts susceptible to judicial notice." *Starr Surplus Lines Ins. Co. v. Mountaire Farms Inc.*, 920 F.3d 111, 114 (1st Cir. 2019) (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)) (internal quotations omitted). In undertaking this review, the court must first "'isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements[,]' then 'take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief.'" *Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2020) (alteration in original) (quoting *Zenón*

Case 3:22-cv-01017-MAJ-BJM   Document 83   Filed 05/31/23   Page 6 of 30

*Concepcion et al. v. Office of the Commissioner of Baseball et al.*, Civil. No. 22-1017 (MAJ/BJM)          6

*v. Guzmán*, 924 F.3d 611, 615–16 (1st Cir. 2019)). "Plausible . . . means something more than merely possible," and gauging the plausibility of a claim for relief is "a 'context-specific' job" that requires drawing on "'judicial experience and common sense.'" *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## DISCUSSION

Defendants move to dismiss all claims for lack of personal jurisdiction. Dkt. 51 at 11. Additionally, they argue the claims against Former-Commissioner Selig must be dismissed because he was not served with a summons. *Id.* Further, they contend this district is an improper venue. *Id.* If this court asserts jurisdiction and finds it is a proper venue, Defendants argue the Players' antitrust claims are barred by the statute of limitations and, even if not, the business of baseball is exempt from such claims. *Id.* Further, they contend the Players' federal and Puerto Rico wage and hour claims must be dismissed because the Players only alleged to have worked for three of the Teams (the Kansas City Royals, San Diego Padres, and San Francisco Giants), the claims are barred by the statute of limitations, and the Players did not work in Puerto Rico. I address each claim in turn.

### I.      Personal Jurisdiction and Venue

Defendants argue this court lacks personal jurisdiction over all of them. Dkt. 51 at 15–23. The Players disagree. Dkt. 55 at 2–4. I recommend finding this court has jurisdiction over the three teams that hired the Players: the Kansas City Royals, San Francisco Giants, and San Diego Padres.

### A. General Jurisdiction

The Players argue Defendants purposely target and recruit Puerto Rican residents in Puerto Rico to work in the continental United States which subjects Defendants to general jurisdiction in

this forum. Dkt. 57 at 13 (citing *F. Fin. Grp. Liab. Co. v. President, Fellows of Harvard Coll.*, 173 F. Supp. 2d 72, 87 (D. Me. 2001)). Specifically, they allege Defendants either employ scouts in, or send them to, Puerto Rico to evaluate and solicit Puerto Rican baseball players. *Id.* They allege Defendants then recruit and sign these players in Puerto Rico. *Id.* Accepting these allegations as true, the Players fail to establish general jurisdiction.

"In a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is proper." *F. Fin. Grp. Liab. Co.*, 173 F. Supp. 2d at 87 (citing *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83 (1st Cir. 1998) (further citations omitted). The plaintiff must make a prima facie showing of personal jurisdiction by citing to specific evidence in the record. *Id.* (citing *Boit v. Gar–Tec Products*, 967 F.2d 671, 675 (1st Cir. 1992)).

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). In "an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014) (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)). In *Perkins*, a mining company based in the Philippines ceased its operations there after Japan invaded during World War II and its president moved to Ohio, "where he kept an office, maintained the company's files, and oversaw the company's activities." 342 U.S. at 448.

Here, the Players cite no evidence that any Defendant is headquartered in Puerto Rico. Instead, they argue the Defendants either employ or send scouts to recruit players who sign contracts in Puerto Rico. Dkt. 57 at 13. Though they cited *F. Fin. Grp. Liab. Co.* for the proposition that these activities suffice to assert general jurisdiction, the court there asserted jurisdiction after the defendant waived their argument contesting it. 173 F. Supp. 2d at 87. Defendants point to a Minnesota case in which the court found scouting and occasional games in that state did not suffice to assert general jurisdiction over the National Hockey League ("NHL") and an NHL franchise. Dkt. 51 at 7 (citing *Collard v. Washington Capitals*, 477 F. Supp. 1247, 1250 n.3 (D. Minn. 1979)). Further, they note a Maine court found a college's recruitment, acceptance of, and subsequent communications with prospective students in a forum state failed to establish general jurisdiction in that state. *Id.* at 8 (citing *Densmore v. Colby-Sawyer Coll.*, 2016 WL 9405316, at *4 (D. Me. Mar. 1, 2016), *report and recommendation adopted*, 2016 WL 1261050 (D. Me. Mar. 29, 2016). The Players argue both cases are irrelevant because the defendants there did not recruit people in the forum state to be employees. Dkt. 57 at 13. However, *Collard* addressed scouting for a professional sports team, precisely the employee-recruitment behavior that the Players rely on here. Accordingly, both cases support declining to assert general jurisdiction.

Moreover, the First Circuit held a hospital was not subject to general jurisdiction in a forum state where it was registered to do business, employed one person, participated in regional patient transfer program, contracted with another hospital, and treated a "substantial number" of residents. *Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 33, 39 (1st Cir. 2010). The *Cossaboon* court noted the plaintiff there did not allege the hospital employed healthcare professionals who provided services in the forum state. *Id.* at 33. Because the Puerto Rican baseball players here did not play baseball in Puerto Rico, that reasoning applies here. Accordingly, scouting, recruiting, and signing

ballplayers in Puerto Rico does not suffice to subject MLB and the Teams to general jurisdiction in this forum.

I note the Players contend Defendants are estopped from arguing there is no personal jurisdiction because they have refused to provide any discovery regarding their business or contacts with Puerto Rico. Dkt. 57 at 34. However, "[a] plaintiff who seeks jurisdictional discovery must make 'a colorable claim of jurisdiction.'" *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 128 (1st Cir. 2022) (citing *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 625–27 (1st Cir. 2001)). To do so, it "must identify a non-frivolous dispute about facts that may yield a sufficient predicate for in personam jurisdiction." *Id.* (citing *Blair v. City of Worcester*, 522 F.3d 105, 111 (1st Cir. 2008)). No such dispute exists here because, even crediting the Players' allegations, I recommend finding this court cannot assert general jurisdiction over Defendants.

## B. Specific Jurisdiction

To establish specific jurisdiction, the Players must demonstrate:

> (1) [their] claim directly arises out of or relates to the defendant's forum activities; (2) the defendant's forum contacts represent a purposeful availment of the privilege of conducting activities in that forum, thus invoking the benefits and protections of the forum's laws and rendering the defendant's involuntary presence in the forum's courts foreseeable; and (3) the exercise of jurisdiction is reasonable.

*LP Sols. LLC v. Duchossois*, 907 F.3d 95, 102 (1st Cir. 2018). I examine each element of this inquiry and recommend this court assert jurisdiction over the Kansas City Royals, San Francisco Giants, and San Diego Padres.

### i.  *Relatedness*

"To show relatedness, [the Players] must produce evidence that shows [their] 'cause of action either arises directly out of, or is related to, the defendant's forum-based contacts.'" *Id.* (citing *Harlow*, 432 F.3d at 61) (further citations omitted). Though the inquiry is guided by causation principles, it is a "flexible, relaxed standard." *Sawtelle v. Farrell*, 70 F.3d 1381, 1389

(1st Cir. 1995) (quoting *Pritzker v. Yari*, 42 F.3d 53, 61 (1st Cir. 1994)). First Circuit courts do not use proximate cause per se when the parties' relationship results from a contractual agreement or business relationship. *Doyle v. Merz N.A., Inc.*, 405 F. Supp. 3d 186, 192 (D. Mass. 2019) (citing *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 715 (1st Cir. 1996)). "In employment disputes, an employment's predominant location is critical in deciding issues of personal jurisdiction." *Id.* (citing *Cossart v. United Excel Corp.*, 804 F.3d 13, 20–21 (1st Cir. 2015)).

Here, the Players all admit they were hired to play for minor league teams located in the continental United States. Dkt. 35 at 11–14. However, they argue Defendants targeted, recruited, solicited, and coerced them into signing their contracts in Puerto Rico. Dkt. 57 at 15. They argue these activities were sufficiently related to their claims. *Id.* The Players cite *Villalobos v. N. Carolina Growers Ass'n, Inc.*, 42 F. Supp. 2d 131 (D.P.R. 1999), a case in which this court found agricultural growers' recruitment of Puerto Rico workers sufficiently related to those workers' subsequent claims for lying about the terms of employment and violating the agreements. *Id.* at 134, 140. Here, similarly, the Players allege the Royals, Giants, and Padres recruited them in Puerto Rico and the terms of their employment agreements constitute the basis of their claims. Accordingly, the activities of those three defendants are sufficiently related to the Players' claims.

### ii.   *Purposeful Availment*

Next, the Players must also show that Defendants' contact with Puerto Rico constitutes purposeful availment of the benefits and protections afforded by this forum's laws. *See Phillips Exeter Academy v. Howard Phillips Fund*, 196 F.3d 284, 288 (1st Cir. 1999). This inquiry considers both voluntariness and foreseeability. *Adelson v. Hananel*, 510 F.3d 43, 50 (1st Cir. 2007). To find a defendant purposely availed itself of a forum, its contacts must not be "random,

fortuitous, or attenuated." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations and internal quotations omitted).

A party's contacts are voluntary when they are deliberate and "not based on the unilateral actions of another party or a third person." *Nowak*, 94 F.3d at 716. A single contact can suffice, so long as it is substantial. *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223 (1957) ("It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State."). "Accordingly, *McGee* stands for the proposition that 'minimum contacts' is not necessarily a numbers game; a single contract can fill the bill." *Pritzker,* 42 F.3d at 61. The *Villalobos* court found purposeful availment by growers who submitted orders to an interstate clearance system aware that those orders would be forwarded to surplus labor areas such as Puerto Rico. 42 F. Supp. 2d at 140. Here, the case for purposeful availment is even stronger because the Royals, Giants, and Padres allegedly knew these Players were in Puerto Rico. By scouting and hiring these workers here, those organizations purposefully availed themselves of this forum. *See id.* at 140–41.

### iii.    *Reasonableness*

Even if a plaintiff can establish minimum contacts between a defendant and the forum state, "the court's exercise of jurisdiction 'must comport with fair play and substantial justice.'" *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 29 (1st Cir. 2008) (further citations omitted). To determine whether the exercise of jurisdiction meets this standard, this court must consider the so-called "gestalt" factors:

> (1) the defendant[s'] burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Cossart*, 804 F.3d at 22 (citation omitted). Defendants argue it would be burdensome to defend themselves in a jurisdiction where none of them are located. Dkt. 51 at 23. However, because an out-of-state trial nearly always involves additional cost and difficulty, the first factor is only relevant where the defendant demonstrates a "special or unusual burden." *Bluetarp Fin. v. Matrix Constr. Co.*, 709 F.3d 72, 83 (1st Cir. 2013) (quoting *Hannon v. Beard*, 524 F.3d 275 (1st Cir. 2008)). Travel to Puerto Rico is not considered an unusual burden for a defendant. *Pritzker*, 42 F.3d 53 at 64.

Next, Defendants argue Puerto Rico has no interest in this dispute because none of Plaintiffs' claims arise out of activities that occurred in Puerto Rico. Dkt. 51 at 23. However, the *Villalobos* court found Puerto Rico had an interest in adjudicating disputes between Puerto Rican workers who, based on recruitment activities in Puerto Rico, travelled to the United States mainland for work. *See also Burger King*, 471 U.S. at 473 (citing *McGee*, 355 U.S. at 223) (noting that a state has a "manifest interest" in adjudicating disputes of residents for harms inflicted by out-of-state actors).

The remaining factors all favor exercising jurisdiction in Puerto Rico. The Players, the majority of whom live in Puerto Rico, have a strong interest in obtaining convenient and effective relief for their alleged wrongs. *See Villalobos*, 42 F. Supp. 2d at 141. Because the recruiting allegedly occurred in Puerto Rico, and most of the Players remain Puerto Rico residents, the judicial system's interest in obtaining the most effective resolution of the controversy weighs in favor of exercising personal jurisdiction. *Id.* Lastly, "it is in the common interests of all sovereigns for Defendants to be subject to personal jurisdiction in Puerto Rico, because such a practice promotes the substantive social policies of holding employers engaged in interstate commerce accountable in all jurisdictions in which they solicit employees." *Id.* Accordingly, I recommend

finding this court has jurisdiction over the Kansas City Royals, San Francisco Giants, and San Diego Padres.

### C. Conspiracy

The Players argue the remaining defendants are subject to this court's jurisdiction because all defendants are part of a conspiracy and the acts of one or more conspirators in furtherance of the violative conspiracy directed at the forum, and perpetuating the conspiracy in the forum, are binding on all conspirators. Dkt. 57 at 23. Essentially, the Players argue all defendants are each other's agents and actions by one subject all of them to the specific personal jurisdiction of this court. *Id.* (citing *Greater Newburyport Clamshell All. v. Pub. Serv. Co. of New Hampshire*, 1983 WL 489274, at *2 (D. Mass. May 25, 1983)). They argue the First Circuit endorsed the logic of this theory by applying agency principles to assert jurisdiction in *Daynard*, 290 F.3d at 53. Dkt. 57 at 24.

Defendants respond that *Greater Newburyport* is an aberration and has been disregarded by other courts in this circuit. Dkt. 58-1 at 9. This court has noted that "conspiracy jurisdiction has not been clearly recognized in this circuit." *Goya Foods Inc. v. Oy*, 959 F. Supp. 206, 211 (D.P.R. 2013) (citing *Glaros v. Perse*, 628 F.2d 679, 682 n.4 (1st Cir. 1980); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 307 F. Supp. 2d 145, 158 (D. Me. 2004)). Another court stated "[o]ther than the *Greater Newburyport* case, no District of Massachusetts or First Circuit case has ever relied on, or explicitly adopted, the conspiracy theory of personal jurisdiction." *In re Lernout & Hauspie Sec. Litig.*, 2004 WL 1490435, at *8 (D. Mass. June 28, 2004). And a New Hampshire court more recently expressed skepticism writing "the Supreme Court has labeled the conspiracy doctrine in the venue context as having 'all the earmarks of a frivolous albeit ingenious attempt to expand the [venue] statute.'" *Ayasli v. Korkmaz*, 2020 WL 4287923, at *13 (D.N.H.

July 27, 2020) (citing *New England Coll. v. Drew Univ.*, 2009 WL 395753, at *3 (D.N.H. Feb. 17, 2009) (quoting *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384 (1953)). Accordingly, I recommend declining to apply it here. Further, as discussed below, even if this court has jurisdiction over the remaining defendants, I recommend dismissing the Players claims for other reasons.

For the reasons discussed, I recommend the Players' claims against all Defendants, except the Kansas City Royals, San Francisco Giants, and San Diego Padres be **DISMISSED without prejudice** for lack of personal jurisdiction.

### D.  Service of Process on Former-Commissioner Selig

Though I recommend dismissing the Players' claims against Former-Commissioner Selig for lack of personal jurisdiction, I also note that Defendants argue Former-Commissioner Selig was improperly served. Dkt. 51 at 24. "If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). The Players admit Former-Commissioner Selig was not served within 90 days and no waiver of service was executed on his behalf. Dkt. 57 at 25. The Players' attorney says he mistakenly forgot to send a waiver of service for Former-Commissioner Selig when he sent waivers for the other defendants to their attorney. *Id.* The Players further argue Former-Commissioner Selig has suffered no prejudice because he is represented by the same attorney who executed waivers on behalf of the other defendants. *Id.*

This is not the first time service of process has been an issue in this case. After the Players' attorney requested a 30-day extension to serve another defendant, this court granted that request "in the interest of justice and to promote judicial economy." Dkt. 5 at 2. I note that "an

overwhelming majority of federal courts have issued a discretionary extension of time to serve the summons and complaint under Rule 4(m), without showing 'good cause.'" *Id.* At 2–3 n.1 (citing *Carmona Delgado v. Administración de Servicios Médicos de Puerto Rico*, 2020 WL 11627597, at *2 (D.P.R. Aug. 5, 2020) (further citation omitted)). However, because I already recommended dismissing the Players' claims against Former-Commissioner Selig for lack of personal jurisdiction, I see no reason to recommend granting such an extension here. Thus, the failure to properly serve Former-Commissioner Selig further supports my recommendation that the Players' claims against him should be dismissed without prejudice.

### E.  Venue

I further note that Defendants assert this district is an improper venue. Dkt. 51 at 29–30. The analysis applied in determining a challenge to venue under Rule 12(b)(3) follows the personal jurisdiction analysis employed in a motion under Rule 12(b)(2). *See Equipo de Baloncesto Capitanes de Arecibo, Inc. v. Premier Basketball League, Inc.*, 706 F. Supp. 2d 195, 197 (D.P.R. 2010) (citing *Steen Seijo v. Miller*, 425 F. Supp. 2d 194, 198 (D.P.R. 2006)). In that analysis, above, I recommended finding this court could assert personal jurisdiction over the Kansas City Royals, San Diego Padres, and San Francisco Giants. Accordingly, I recommend finding this court is a proper venue for the Players' claims against those three defendants.

### II.     The Antitrust Claims

Defendants and the Players dispute whether the statute of limitations for these claims has run. *See* Dkt. 51 at 24–28; Dkt. 57 at 26–28. They also debate whether baseball's antitrust exemption applies to this case. Dkt. 51 at 30–33; Dkt. 57 at 29–33. I recommend dismissing Concepcion's claims as untimely. And I recommend dismissing Burgos and Duprey-Conde's claims due to baseball's antitrust exemption.

### A.  Statute of Limitations

"The basic rule is that damages are recoverable under the federal antitrust acts only if suit therefor is 'commenced within four years after the cause of action accrued,' . . . plus any additional number of years during which the statute of limitations was tolled." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971) (citing 15 U.S.C. §15b). Though they signed contracts in 2010, 2015, and 2016, the Players argue they may still bring their claims because they were paid pursuant to those contracts within the statute of limitations and because the statute of limitations was tolled while another suit was pending. I address each claim below.

### i.      *Continuing Violation*

The Players argue that, when an antitrust wage fixing violation results in periodic violative payments, the four-year statute of limitations starts anew with each payment. Dkt. 57 at 26 (citing *Xechem v. Bristol-Meyers Squibb Co.*, 372 F.3d 899, 902 (7th Cir. 2004); *In re Relafen Antitrust Litigation* 286 F. Supp. 2d 56, 62 (D. Mass. 2003)). The *Xechem* court observed, "[t]he period of limitations for antitrust litigation runs from the most recent injury caused by the defendants' activities rather than from the violation's inception." 372 F.3d at 902 (citing *Zenith*, 401 U.S. 321). The plaintiffs in *Xechem* alleged a pharmaceutical company improperly prolonged its monopoly by filing multiple new patent applications just as its exclusive right to sell a drug was set to expire. *Id.* at 900. The court held "these new acts extended the period during which [the defendant] held a monopoly, causing additional antitrust injury." *Id.* at 902. Accordingly, it held the plaintiffs could proceed with claims challenging those additional patent applications because "each discrete act with fresh adverse consequences starts its own period of limitations." *Id. In re Relafen* acknowledged that, in price-fixing conspiracies, "a monopolist that 'continues to use the power it has gained illicitly [through predatory pricing] to overcharge its customers . . . has no claim on the

repose that a statute of limitations is intended to provide.'" 286 F. Supp. 2d at 62 (citing *Berkey Photo Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 295 (2d Cir. 1979)). However, the *In re Relafen* court found the activity at issue there, litigating a sham lawsuit, did not constitute a continuing violation. *Id.*

Defendants argue the Players failed to set forth specific facts to show their claim is not time-barred. This, they contend, required the players to cite an "overt act" within the limitations period that was "part of the violation and that injures the plaintiff." Dkt. 58-1 at 12 (citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997)). Additionally, they contend the Players were required to show more than damages from the ongoing effects of some past act. *Id.* (citing *Goldman v. Sears, Roebuck & Co.*, 607 F.2d 1014, 1018 (1st Cir. 1979)). Defendants argue the allegedly violative payments that occurred in December 2018 and August 2019 appear nowhere in the complaint. *Id.* at 12–13. Accordingly, they argue the Players failed to plead a timely antitrust claim.

Though the complaint does not state the exact dates and amounts the Players were paid, it outlines the years they played minor league ball and states they were paid less than $15,000 during each year. Dkt. 35 at 12–15. It subsequently alleges these payments were the product of an illegal conspiracy. Dkt. 35 at 51–54. "The general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief . . . . This short and plain statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Gargano v. Liberty Intern. Underwriters, Inc.*, 572 F.3d 45, 48 (1st Cir. 2009) (internal citations and quotation marks omitted). Though the complaint may have benefited from additional specificity, Defendants did not need to know the exact months when the Players were paid to determine that the Players may raise a continuing violation issue. Further, because the remaining

defendants were the entities that paid the Players, this information was presumably already known to them.

Thus, I turn to Defendants' argument that the allegedly violative payments were merely the ongoing effects of some past act barred by the statute of limitations. Dkt. 58-1 at 12 (citing *Klehr*, 521 U.S. at 189). *Klehr* held that when a price-fixing conspiracy lasts for several years, "'each overt act that is part of the violation and that injures the plaintiff,' e.g., each sale to the plaintiff, 'starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times.'" 521 U.S. at 189 (citations omitted). The First Circuit has not addressed what constitutes an overt act in the wage fixing context. A Maryland court found this test met when meatpackers alleged that their employers continuously refreshed the statute of limitations by repeatedly sharing compensation information amongst each other. *Jien v. Perdue Farms, Inc.*, 2020 WL 5544183, at *14 (D. Md. Sept. 16, 2020). And a California court found allegations that the defendants there adhered to anticompetitive wage agreements were insufficient to state a continuing violation without allegations of wrongful communications between the employers or other new or independent actions. *In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1212 (N.D. Cal. 2015).

Taking the Players allegations as true, as is required at this stage, they plausibly alleged Defendants shared compensation data amongst each other. They stated MLB rules required Defendants to file the Players' contracts with MLB's commissioner for approval. Dkt. 35 ¶ 16. Further, Defendants allegedly renewed these contracts annually. *Id.* ¶ 15. Like the meatpackers in *Jien*, this repeated communication amongst the defendants refreshed the statute of limitations because it facilitated the sharing of compensation information amongst them. Accordingly, I recommend finding the Players adequately alleged a continuing violation.

Concepcion, Duprey-Conde, and Burgos stopped playing minor league baseball in 2016, 2018, and 2019 respectively. Dkt. 35 at 12–13. Though the Players allege Defendants annually renewed and filed their contracts with MLB's Commissioner, thus sharing their compensation information amongst each other, it is unclear from their complaint when this act occurred each year. The Players filed their amended complaint on June 5, 2022. They do not address whether this complaint relates back to their original complaint, filed January 11, 2022. Dkt. 1. Assuming Concepcion's last contract was filed in 2016, his claims are still barred by the four-year statute of limitations. Because it is unclear when in 2018 Dupre-Conde's contract was filed, his claim may or may not barred by the statute of limitations. Taking the facts in the light most favorable to him, it is at least plausible his claim is not time-barred. Under no circumstances would Burgos's claim for a contract filed in 2019 be barred by the statute of limitations.

### ii.     Tolling

Concepcion argues his claims are nevertheless not time-barred because they were tolled by a 2016 lawsuit. Dkt. 57 at 27–28 (citing *Miranda v. Selig*, 2015 WL 5357854 (N.D. Cal. 2017)). In *Miranda*, the same lawyers bringing this action sued MLB and the Teams in the Northern District of California on behalf of a purported class of minor leaguers. *See* 2015 WL 5357854. That court dismissed their claims, the Ninth Circuit affirmed, and the Supreme Court denied certiorari. *See id.*; *Miranda v. Selig*, 860 F.3d 1237 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 507 (2017). Concepcion argues his claims were tolled from the time the lawsuit was filed until the Supreme Court denied certiorari. Dkt. 57 at 27.

> *American Pipe* [*& Constr. Co. v. Utah,* 414 U.S. 538 (1974)] tolls the statute of limitations during the pendency of a putative class action, allowing unnamed class members to join the action individually or file individual claims if the class fails. But *American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations.

*China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018). Concepcion did not join the *Miranda* class action and did not file an individual claim after the class action was dismissed. *China Agritech* explicitly differentiates between individual claims, which are tolled while a class action is pending, and subsequent class actions, which are not. *Id.* at 1806–07 (explaining that economy of litigation favors delaying individual claims until after a class certification denial, but efficiency favors early assertion of competing class representative claims). Accordingly, *Miranda* did not toll the statute of limitations for this purported class action suit. Though Concepcion argues the *Miranda* court never reached class certification because it dismissed the case on other grounds, "the tolling effect of a motion to certify a class applies only to individual claims, no matter how the motion is ultimately resolved." *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 915 F.3d 1, 17 (1st Cir. 2019). Because *Miranda* did not toll Concepcion's antitrust claims, his claims are barred by the statute of limitations.

Accordingly, I recommend Defendants' motion to dismiss Concepcion's antitrust claims for damages and injunctive relief against the Kansas City Royals be **GRANTED**. Those claims should be **DISMISSED with prejudice.**

### B.  Baseball's Antitrust Exemption

That leaves Duprey-Conde, and possibly Burgos, with viable Sherman Act claims. Nevertheless, the Supreme Court held just over a century ago that the Clayton and Sherman Acts do not apply to the business of baseball. *Fed. Baseball Club of Baltimore, Inc. v. Nat'l League of Pro. Baseball Clubs*, 259 U.S. 200 (1922). It has upheld that decision twice, citing professional baseball's reliance on it. *Toolson v. New York Yankees, Inc.*, 346 U.S. 356 (1953); *Flood v. Kuhn*, 407 U.S. 258 (1972). Also in *Flood*, "the Court stressed that Congress had acquiesced in the baseball exemption and thus 'by its positive inaction . . . clearly evinced a desire not to disapprove

[it] legislatively.'" *City of San Jose v. Off. of the Com'r of Baseball*, 776 F.3d 686, 689 (9th Cir. 2015) (citing *Flood*, 407 U.S. at 283–84). In 1998, Congress enacted the Curt Flood Act, which repealed baseball's antitrust exemption only for disputes relating to the employment of Major League players. 15 U.S.C. § 26b(a). However, it explicitly affirmed that the exemption covered the rest of the business of baseball, including employment of minor league players, the amateur draft, or "any reserve clause as applied to minor league players." 15 U.S.C. § 26b(b)(1).

As discussed, the same lawyers who brought this case previously filed a strikingly similar claim in the Northern District of California. *See* Complaint, *Miranda v. Selig*, 2015 WL 5357854 (N.D. Cal. 2017) (No. 14-5349), 2014 WL 6865661. After it was dismissed, they appealed to the Ninth Circuit, which held "that minor league baseball—particularly the employment of minor league baseball players and the requirement that they sign a uniform contract containing a reserve clause—falls squarely within baseball's exemption from federal antitrust laws." *Miranda*, 860 F.3d at 1242, *cert. denied*, 138 S. Ct. 507.

Undeterred, the Players argue here the business-of-baseball exemption lacks merit given the Court's decisions in *Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141 (2021) and *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022). Dkt. 57 at 29–32. Further, they point to proposed Congressional legislation to end the exemption and the Department of Justice's statement of interest in another case arguing the baseball exemption is aberrational and rests on a repudiated rationale. *Id.* at 33, 36–54. I address each argument in turn and recommend finding that none allows this court to overturn 100 years of Supreme Court precedent.

*Alston* examined claims by current and former college athletes that the National Collegiate Athletics Association ("NCAA") violated federal antitrust law. 141 S. Ct. 2141. Writing for a unanimous majority, Justice Gorsuch noted the Court "once dallied with something that looks a

bit like an antitrust exemption for professional baseball." *Id.* at 2159. However, he found it has refused to extend that decision to other sports leagues and has acknowledged criticisms calling the decision "unrealistic," "inconsistent," and "aberration[al]." *Id.* (citing *Flood*, 407 U.S. at 282). He concluded that the Court "has already recognized that the NCAA itself is subject to the Sherman Act." *Id.* The Players argue this language signals the Supreme Court is ready to eliminate baseball's antitrust exemption. Dkt. 57 at 30. Maybe so, but that is not a decision this court can make. *See Hohn v. United States*, 524 U.S. 236, 252–53 (1998) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality.").

The Players also argue the Court's recent decision in *Dobbs*, overruling *Roe v. Wade*, 410 U.S. 113 (1973) and *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992), supports their argument that stare decisis does not warrant upholding "egregiously wrong" cases. *Id.* at 30 (citing *Dobbs*, 142 S. Ct. at 2242). However, even accepting that argument, nothing in *Dobbs* authorizes lower courts, such as this one, to overrule Supreme Court precedent.

Next, though the Players note a pair of senators are proposing legislation to end the business-of-baseball exception, this court may not treat that proposed legislation as the law itself. Current law exempts minor league players from antitrust protections. *See* 15 U.S.C. § 26b(b)(1). Lastly, the Players argue the Department of Justice filed a statement of interest in a recent case urging a district court to narrowly interpret baseball's antitrust exemption. Dkt. 57 at 33 (citing Dkt. 57 at 36–54). In that case, four minor league teams sued the 30 major league teams on behalf of themselves and 36 other minor league teams who lost their affiliations with major league teams when MLB restructured its minor league system. *Nostalgic Partners, LLC v. Off. of Comm'r of Baseball*, 2022 WL 14963876 (S.D.N.Y. Oct. 26, 2022). After noting the Department of Justice's

statement, the court found the claims there fell within even a narrow interpretation of the exemption, because "minor league affiliations are central to the business of baseball." *Nostalgic Partners*, 2022 WL 14963876, at *7. Similarly, the requirement that minor leaguers sign a uniform contract containing a reserve clause "falls squarely within baseball's exemption from federal antitrust laws." *Miranda*, 860 F.3d at 1242.

Accordingly, I recommend Defendants' motion to dismiss Duprey-Conde and Burgos's antitrust claims for damages and injunctive relief (Counts One through Three) against the San Francisco Giants and San Diego Padres be **GRANTED**. Those claims should be **DISMISSED with prejudice**.[1]

### III.    Declaratory Relief

I note the Players seek declarations from this court that the Curt Flood Act and business-of-baseball exemption are unconstitutional. Dkt. 35 ¶¶ 179–85. As discussed above, the Supreme Court has repeatedly upheld the business-of-baseball exemption and this court lacks any authority to question that precedent.

The Curt Flood Act states the exemption does not apply to the employment of major leaguers, but does apply to minor leaguers. *See* 15 U.S.C. § 26b(a)–(b)(1). The Players argue this violates the Equal Protection Clause of the Fourteenth Amendment. Dkt. 35 ¶ 180. In *Miranda*, the Ninth Circuit cited the Curt Flood Act when dismissing minor league players' antitrust claims without undertaking an equal protection analysis. 860 F.3d at 1241–42. In their petition for certiorari arguing in part that the Curt Flood Act was unconstitutional, those players acknowledged they did not raise the act's constitutionality with the Ninth Circuit. Dkt. 57 at 97 n.4. As discussed, their petition was denied. *Miranda v. Selig*, 138 S. Ct. 507 (2017). No other court has determined

---

[1] The same rationale provides an additional ground to dismiss Concepcion's antitrust claims for damages and injunctive relief with prejudice.

whether the Curt Flood Act's differential treatment of major league and minor league players passes equal protection scrutiny.

As an initial matter, the Equal Protection Clause of the Fourteenth Amendment only applies to the states. *See* U.S. CONST. amend. XIV, § 1. ("[N]or shall any State . . . deny to any person within its jurisdiction the equal protection of the laws."). However, the Court has interpreted the Due Process Clause of the Fifth Amendment to test federal classifications under the same standard of review. *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954), *supplemented sub nom. Brown v. Bd. of Educ. of Topeka, Kan.*, 349 U.S. 294 (1955). Further, it has expressly stated that "[e]qual protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment." *Buckley v. Valeo*, 424 U.S. 1, 93 (1976). Thus, I will assume the Players' citation to the Fourteenth Amendment suffices to bring their equal protection claim under the Fifth Amendment.

"Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage," courts assume such classifications are constitutional "and require only that the classification challenged be rationally related to a legitimate state interest." *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) "[T]hose attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it.'" *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)). Equal protection does not "require a legislature to articulate its reasons for enacting a statute," and the "conceived reason[s]" put forth in support of the statute in litigation do not need to be the same as those that "actually motivated the legislature." *Id.*

Congress passed the Curt Flood Act "to state that major league baseball players are covered under the antitrust laws" that protect other professional athletes. Curt Flood Act of 1998, Pub. L.

No. 105–297, § 2, 112 Stat 2824 (1998). Further, it sought to clarify the act "does not change the application of the antitrust laws in any other context or with respect to any other person or entity." *Id.* In its statement of purpose, Congress did not explain why it sought to exclude minor leaguers from those protections. However, the legislative history shows Congress reiterated the Curt Flood Act exempted minor league players before passing it to ensure the "continued economic success of minor league baseball." 105 Cong. Rec. H9946 (daily ed. Oct. 7, 1998) (Chabot, Steve). In doing so, Congress noted that minor league baseball was played in over 150 towns across the country. 105 Cong. Rec. H9943 (daily ed. Oct. 7, 1998) (Hyde, Henry J.).

In *Dukes*, the Supreme Court upheld a New Orleans ordinance banning all pushcart food vendors in the French Quarter who had not continuously operated there for eight or more years. 427 U.S. at 299. The Court accepted the city's claim that vendors detracted from the charm and beauty of the historic area, disturbed tourists, and "might thus have a deleterious effect on the economy of the city." *Id.* at 304–305. It found the distinction between new and old vendors legitimate because newer vendors were less likely to have "built up substantial reliance interests in continued operation." *Id.* at 305.

Here, Congress could rationally have determined that extending antitrust protection to minor league players would undermine the financial viability of minor league baseball teams and thus damage the economies of the numerous towns where they play. The Players argue it was irrational of Congress to provide antitrust protection to major league baseball players who don't need it, while excluding minor league players who lack other means to protect themselves. Dkt. 57 at 99. However, rational-basis review "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993). The Players did not address Congress's reasoning that minor league teams could not afford to operate if their

players benefitted from antitrust protections and that communities where those teams play would suffer as a result. Thus, they failed to meet their burden to "negative every conceivable basis" that could support Congress's classification. *See id.* at 320 (citing *Lehnhausen*, 410 U.S. at 364).

Accordingly, I recommend the Defendants motion to dismiss the Players' requests for declaratory relief from the Curt Flood Act and business-of-baseball exemption be **GRANTED**. Those claims should be **DISMISSED with prejudice.**

### IV.    FLSA Claims

The Players allege their wages violated the FLSA. Dkt. 35 ¶¶ 186–217. Defendants argue the Players' FLSA claims are barred by the statute of limitations and the Save America's Pastime Act ("SAPA"). Dkt. 51 at 28–29. Alternatively, they contend the Players lack standing to bring those claims against any defendant besides the Kansas City Royals, San Francisco Giants, and San Diego Padres. *Id.* at 35–37. I agree with Defendants' first argument. Further, I already recommended dismissing claims against all Defendants except the Kansas City Royals, San Francisco Giants, and San Diego Padres. Accordingly, I do not reach Defendants' argument regarding standing.

### A.   Timing

Under the FLSA, an action "may be commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Concepcion, Duprey-Conde, and Burgos stopped playing minor league baseball in 2016, 2018, and 2019 respectively. Dkt. 35 at 12–13. Though the Players make no argument that Concepcion and Duprey-Conde may somehow bring their claims, they contend that Defendants conceded Burgos's claims are not barred by the statute of limitations. Dkt. 57 at 28. While true, Burgos cannot bring claims for wage

and hour violations that occurred after March 23, 2018, when Congress passed the SAPA exempting baseball players from the FLSA. *See Senne v. Kansas City Royals Baseball Corp.*, 591 F. Supp. 3d 453, 489 (N.D. Cal. 2022)); *see also* 29 U.S.C. § 213(a)(19). Further, the statute of limitations is, at most, three years and Burgos's claims were filed in 2022. Thus, any claims he had prior to March 23, 2018 are barred by the three-year statute of limitations. Accordingly, I recommend Defendants' motion to dismiss the Players' FLSA claims be **GRANTED**. Those claims should be **DISMISSED with prejudice.**

### V.    Puerto Rico Wage and Hour Claims

Defendants argue the Players may not assert their Puerto Rico wage and hour claims because those claims are barred by the Commonwealth's statute of limitations and because they did not perform work in Puerto Rico. Dkt. 51 at 38–39; Dkt. 58-1 at 13. Because I agree with their first argument, I do not reach the second.

Plaintiffs allege this court has federal question jurisdiction. Dkt. 35 ¶ 96. Because this is not a diversity case, the power of the federal court to hear and to determine state law claims depends on the presence of at least one "substantial" federal claim in the lawsuit. *Newman v. Burgin*, 930 F.2d 955, 963 (1st Cir. 1991) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). Federal jurisdiction thus hinges on the Players' Sherman Act and FLSA claims. "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995); *see also Martinez v. Colon*, 54 F.3d 980, 990 (1st Cir. 1995) (finding "jurisdictional basis for plaintiff's pendent claims under Puerto Rico law evaporated" after summary judgment granted

for federal claims). The proceedings here are at the motion to dismiss stage. As such, dismissal of the Players' federal claims favors dismissal of their Puerto Rico claims without prejudice.

However, "[i]n an appropriate situation, a federal court may retain jurisdiction over state-law claims notwithstanding the early demise of all foundational federal claims." *Rodriguez*, 57 F.3d at 1177. "[T]he exercise of supplemental jurisdiction in such circumstances is wholly discretionary." *Id.* When deciding whether to exercise supplemental jurisdiction, courts consider a balance of factors, including, "judicial economy, convenience, fairness and comity." *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (citing *Gibbs*, 383 U.S. at 726–27); *see also Mercado–Garcia v. Ponce Federal Bank*, 979 F.2d 890, 896 (1st Cir. 1992). These factors generally favor "relinquish[ing] jurisdiction when state issues predominate, whether in terms of proof, of the scope of the issues raised, or the comprehensiveness of the remedy sought." *Carnegie–Mellon*, 484 U.S. at 350 n.7 (citing *Gibbs*, 383 U.S. at 726). *See also Fabregas v. ITT Intermedia, Inc.*, 13 F. Supp. 2d 225, 229 (D.P.R.1998). However, as discussed below, the Players' supplemental claims are time-barred. Accordingly, these factors support exercising supplemental jurisdiction and dismissing these claims with prejudice.

"The running of the statute of limitations on a pendent claim, precluding the filing of a separate suit in state court, is a salient factor to be evaluated when deciding whether to retain supplemental jurisdiction." *Rodriguez*, 57 F.3d at 1177. Defendants state Puerto Rico workers must bring claims within one year. Dkt. 51 at 28–29 (citing 29 L.P.R.A. § 250j) ("An employee's suit to claim wages against his employer under this chapter, . . . or under any contract or law, shall prescribe within a term of one (1) year."). However, prior to a 2017 amendment, the statute of limitations was three years. *See* 29 L.P.R.A. § 250j, Amendments. Further, in 2022, the Puerto Rico legislature reinstated the three-year statute of limitations. *See* 2022 P.R. Laws Act 41 (H.B.

1244) ("The statute of limitations for an employee to file a wage claim against his employer under this Act or a mandatory decree whether approved now or in the future, in accordance with this Act or any contract or law shall be three (3) years."). This law took effect on July 20, 2022. *Id.* The statute of limitations for these laws begins running from the time the employee ceased working for the employer. *See id.*; 29 L.P.R.A. § 250j.

As discussed, Concepcion, Duprey-Conde, and Burgos stopped playing minor league baseball in 2016, 2018, and 2019 respectively. Dkt. 35 at 12–13. Concepcion's three-year statute of limitations thus expired in 2019. Duprey-Conde and Burgos's time to file under the then-relevant one-year statute of limitations expired in 2019 and 2020 respectively. The Players filed this action in 2022. Thus, all their claims are barred by the statute of limitations. Accordingly, I recommend Defendants' motion to dismiss the Players' minimum wage and unpaid overtime claims be **GRANTED** and those claims should be **DISMISSED with prejudice**.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the complaint should be **GRANTED**.

The Players' Sherman Act, FLSA, and Puerto Rico wage and hour claims against all Defendants, except the Kansas City Royals, San Francisco Giants, and San Diego Padres, should be **DISMISSED without prejudice.** Their Sherman Act, FLSA, and Puerto Rico wage and hour claims against the Kansas City Royals, San Francisco Giants, and San Diego Padres should be **DISMISSED with prejudice**.

The Players' claims for declaratory relief from the Curt Flood Act and baseball's antitrust exemption should be **DISMISSED with prejudice**.

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within fourteen days** of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 31st day of May, 2023.

<u>*s/ Bruce J. McGiverin*</u>
Bruce J. McGiverin
United States Magistrate Judge